

FILED
JUN 23 2014
Circuit Court
Crawford County

**IN THE CIRCUIT COURT OF CRAWFORD COUNTY
STATE OF MISSOURI**

| | | |
|---|---|---|
| MICHAEL CASELMAN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case Number: 14CF-CC00043 |
| v. | ) | |
| | ) | Division: I |
| GEORGIA-PACIFIC GYMPSUM LLC | ) | |
| | ) | |
| **Serve Registered Agent:** | ) | |
| C T Corporation System | ) | **JURY TRIAL DEMANDED** |
| 120 South Central Avenue | ) | |
| Clayton, MO 63105 | ) | |
| | ) | |
| Defendant. | ) | |

## PETITION

COMES NOW Plaintiff, Michael Caselman, by and through his attorneys, and for his cause of action against Defendant, Georgia-Pacific Gypsum LLC, states and alleges as follows:

### Parties and Jurisdiction

1. Plaintiff is a citizen of the United States and the State of Missouri. Plaintiff was an employee of Defendant within the meaning of the Missouri Human Rights Act, MO. REV. STAT. § 213.010 *et seq.* (the "MHRA")

2. Defendant is a Delaware limited liability company registered as a foreign limited liability company with the Missouri Secretary of State. Defendant is an "employer" within the meaning of the MHRA.

3. At all times relevant herein, Defendant was authorized to conduct business in the State of Missouri and was doing business in the State of Missouri.

4. Defendant conducts substantial and continuous business and has substantial and continuous contacts with the State of Missouri and the City of Cuba.

5.  This is an employment case based upon and arising under the MHRA, specifically unlawful discrimination based on Plaintiff's age, religion and disability and unlawful retaliation under §§ 213.055 and 213.070 of the MHRA, respectively.

6.  This Court has jurisdiction and venue over all factual and legal matters relevant to this cause of action.

7.  Plaintiff's cause of action arises out of conduct that took place at Defendant's gypsum facility in Cuba, Crawford County, Missouri.

8.  Defendant employed Plaintiff at Defendant's Cuba facility from June 1, 2013 until on or about March 6, 2014, at which point Defendant terminated Plaintiff's employment.

9.  Jurisdiction and venue are proper in Cuba, Crawford County, Missouri, pursuant to MO. REV. STAT. §§ 508.010 and 213.111.

### General Allegations Common to All Counts

10. At the age of 49, Plaintiff applied for a manufacturing position at Defendant's Gypsum facility and was called in for an interview in June of 2013.

11. The interview went well, during which time Plaintiff told the interviewers about being active in the Ministry, a Pentecostal blend of Christianity, and disclosed that he has a sleep disorder.

12. Plaintiff's sleep disorder is Restless Leg Syndrome ("RLS"), and he also suffers from sleep apnea.

13. This sleep disorder requires a C-Pap machine and prescribed medication, Klonipin. If he missed a dosage of Klonipin, it could give him a seizure or even cause hospitalization.

14. At the interview, Plaintiff disclosed this disorder when asked if it was alright that there might be a possibility of rotating shifts. Plaintiff immediately and candidly said, "I have a sleep disorder and take medication for it; I would try to do any job, but it would be very difficult for me to rotate hours."

15. The interviewers did not express that there was a problem with this, and the Human Resources Manager, Joe Vallero, offered Plaintiff a position as a Utility Operator starting in the banding department on July 10, 2013.

16. The position was a day shift position, and Plaintiff believed that it was a day shift position because of Plaintiff's sleep disorder.

17. At all times relevant herein, Plaintiff was supervised by his Foreman, Matt Walker. Early on, for reasons unknown to Plaintiff, Mr. Walker applied two standards: one for Plaintiff and one for everyone else. For instance, all employees started with proper training, except Plaintiff.

18. Mr. Walker required that others not help Plaintiff, leaving Plaintiff to get caught up to speed on his own.

19. After asking multiple times for proper banding table training, Plaintiff experienced the same result, which was Mr. Walker ignoring him and walking off.

20. This disparate treatment was so blatant that numerous employees witnessed it, and one of them stood up for Plaintiff by asking Mr. Walker if Plaintiff could be trained on the over-size banding table. Mr. Walker refused.

21. Notwithstanding this lack of training, Plaintiff maintained a solid performance level and, in time, actually trained new probation workers who would quickly progress past him.

22. Moreover, Mr. Walker singled out Plaintiff's work over all of the younger workers by telling him things like no more than four or five doors should be stacked without stamping and that Plaintiff should perform better. This was a policy that applied only to Plaintiff as other workers would stack the doors until the entire skid was full before stamping without any backlash from Mr. Walker.

23. More surprisingly, these workers were offered permanent positions in the departments that they were in with higher pay.

24. Additionally, Mr. Walker communicated to Plaintiff that he should make sure the clips were straight and professional looking, even though Plaintiff's clips were attached the same way as everyone else's clips.

25. After about six weeks on the job, Mr. Walker pulled Plaintiff aside and told him to go to another department, the chop saw, in order to assist others because "there was just no place in banding" for him.

26. Mr. Walker told Plaintiff that he would be doing rotating shifts. Plaintiff told Mr. Walker that he could not do rotating shifts because of his sleep disorder.

27. Mr. Walker completely disregarded this, telling Plaintiff that he was told about rotating shifts during his interview. Plaintiff reminded him that at that same interview he did not hide anything but instead, stressed the severity of his condition and how it precluded him from working on rotating shifts.

28. Immediately after that conversation, Mr. Walker told him that there was just no room for him there even though he was having other employees trained on those same tasks.

29. Almost everyone in final processing was under the age of 30 and just about everyone hired to work the chop saw was under the age of 25.

30. Around 60 days after being hired, another incident occurred when Mr. Walker specifically targeted Plaintiff and pulled him off of the chop saw to attend a meeting regarding a customer complaint with the banding department.

31. Even though it was ultimately determined that one of the sanders had simply been adjusted incorrectly, Mr. Walker directly accused Plaintiff of being the one responsible for the complaint.

32. On day 70 of his employment, Plaintiff was called into Mr. Walker's office, and Mr. Walker asked Plaintiff how he thought he was doing. Plaintiff told him that he was already running the chop saw, entering in sizes on the computer and filling orders. The only thing Plaintiff was not allowed to do at that point was drive a forklift, since Plaintiff was not yet cleared to do it despite the fact that Plaintiff had driven forklifts for over 25 years.

33. Mr. Walker again told Plaintiff there was no room for him in banding or anywhere else except, again, on rotating shifts. Plaintiff reminded Mr. Walker again of his medical condition, but Mr. Walker expressed that he did not care.

34. Afterwards, Plaintiff repeated what Mr. Walker had told him to another worker, Brent. Like other employees, Brent stood up for Plaintiff by telling Mr. Walker that Plaintiff was a good worker and asked Mr. Walker to let Plaintiff drive the forklift on a regular shift. Mr. Walker still refused.

35. Because of Mr. Walker's blatant disregard for Plaintiff's medical condition and his subsequent worry for adverse health consequences, Plaintiff called the corporate ethics line to file a discrimination report.

36. The next day, Plaintiff went into Mr. Vallero's office where others, including Mr. Walker, were waiting. Mr. Vallero asked Plaintiff if he wanted to talk about the report that had

been filed with corporate. Plaintiff said, "Yes." Mr. Vallero said that he read the report and wanted Plaintiff to explain what he had put in the report.

37.     Plaintiff recounted Mr. Walker's conversations with him and how he was attempting to force Plaintiff to work in a department with rotating shifts. Plaintiff repeated that he has a sleep disorder and described the bad effects that can result from such a change.

38.     Mr. Vallero spoke up and said that rotating shifts were asked about during Plaintiff's interview. Plaintiff said, "Yes, you asked me about that; I also told everyone of my sleep disorder, and you hired me knowing this. I figured you put me on day shift because of that." Mr. Vallero replied, "No, that was just the luck of the draw."

39.     Mr. Vallero then requested that Plaintiff have his doctor fill out a form stating that he is medically fit to work.

40.     When prompted by Mr. Vallero at the end of the meeting if he would like to state anything else, Plaintiff recalled his disparate treatment by Mr. Walker. Afterwards, Plaintiff proceeded to shake hands with everyone. However, Mr. Walker never looked him in the eye and barely shook his hand. From that point on, anytime that Plaintiff ran into Mr. Vallero, he would look extremely uncomfortable around Plaintiff.

41.     Plaintiff's doctor filled out the form. The form defined "medically fit" as the ability to lift, push, and pull, up to a hundred pounds, stand all day, and work 12 hour shifts up to 7 days a week, plus rotating shifts.

42.     She wrote that Plaintiff was medically fit to work and could perform shift work, but due to his sleep disorder, he should be kept on a regular schedule. Shift changes could take place at worst on a monthly basis, preferably at six months, before considering a shift change. A

copy of the filled out form is attached hereto, marked Plaintiff's Exhibit "A" and made a part hereof as if fully set forth herein. He turned this into Mr. Vallero.

43. When a person is hired, the lead man has a form to fill out in order to illustrate that a person is trained in tasks called a "sign-off sheet".

44. When Plaintiff was in banding, the lead man signed off that Plaintiff was trained to do everything. After Plaintiff's meeting with Mr. Walker on day 70, Mr. Walker had Brent fill out his chop saw form, illustrating that he was trained in everything except the forklift. Out of everyone who started simultaneously with Plaintiff, he was the only employee not signed off on the forklift.

45. Some employees were even trained on the forklift after a week or two, whereas Plaintiff was not released to work the forklift after months on the job.

46. On October 10, Plaintiff completed his 90th day of probation. If completed successfully, an employee receives an orange hard hat instead of a yellow hard hat in order to signify his status as a promoted employee, complete with numerous benefits and a pay raise. Instead of receiving those benefits, Mr. Walker approached Plaintiff and asked him to go to his office.

47. In the office, Mr. Walker told him that Mr. Vallero had decided that "because of your sleep thing, we have no home for you here, and we are going to extend your probation for another 60 days," in order to "see."

48. At this time, multiple new hirees had been hired and trained after Plaintiff, and there were five new hirees scheduled to start the following month.

49. Later, Mr. Vallero handed Plaintiff more forms for his doctor to complete that asked for the same information as before.

50. Even at this point, Defendant was refusing to follow the medical directions of Plaintiff's doctor.

51. Despite his doctor clearly outlining Plaintiff's limitations, Mr. Vallero was requiring even more precise language from the doctor. Mr. Vallero even told Plaintiff that all of this was happening to him because he filed a corporate ethics complaint earlier.

52. Plaintiff then filed a complaint with the MCHR and the EEOC, and during the resulting investigation, Defendant terminated Plaintiff's employment.

### Administrative Procedures

53. Plaintiff realleges and incorporates all of the above paragraphs as if fully stated herein.

54. On or about November 13, 2013, Plaintiff timely filed with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination against Defendant alleging discrimination based on his age, religion and disability as well as retaliation (a copy of said Charge of Discrimination is attached hereto, marked Plaintiff's Exhibit "B" and made a part hereof as if fully set forth herein). Upon being fired during the EEOC's investigation, Plaintiff filed an amended Charge of Discrimination (a copy of which is attached hereto, marked Plaintiff's Exhibit "C" and made a part hereof as if fully set forth herein) and requested a Notice of Right to Sue.

55. On or about March 26, 2014, the MCHR issued to Plaintiff a Notice of Right to Sue (a copy of said Notice of Right to Sue is attached hereto, marked Plaintiff's Exhibit "D" and made a part hereof as if fully set forth within), and this lawsuit was filed within 90 days of the issuance of the MCHR's Notice of Right to Sue.

56. The aforesaid Charge of Discrimination provided the MCHR and the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of a MCHR or EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

57. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action, and it has been filed within the requisite statute of limitations.

## COUNT I

### Violation under MO. REV. STAT. § 213.010 et seq. Failure to Accommodate

58. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

59. Plaintiff is "disabled" as that term is defined by the MHRA at all times relevant herein.

60. Plaintiff is disabled pursuant to the MHRA because he suffers from Restless Leg Syndrome ("RLS") and sleep apnea, and thus, Plaintiff is a member of a class of persons protected by the MHRA.

61. Plaintiff's disability affects several of his major life activities as described in the MHRA.

62. Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

63. Plaintiff requested the reasonable accommodation of not having to rotate shifts.

64. The above-referenced request was a reasonable accommodation that was possible for Defendant to provide.

65. Defendant refused to engage in any interactive process with Plaintiff to determine a reasonable accommodation for his disabilities.

66. Instead of providing Plaintiff with the requested accommodation without adverse action, Defendant terminated Plaintiff's employment.

67. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

68. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

69. By failing to take prompt and effective remedial action, Defendant, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

70. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

71. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided in Mo. Rev. Stat. § 213.111.2.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, for pre- and post- judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT II

**Violation under MO. REV. STAT. 213.010 et seq. Disability Discrimination**

72. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

73. Plaintiff is "disabled" as that term is defined by the MHRA at all times relevant herein.

74. Plaintiff is disabled pursuant to the MHRA because he suffers from Restless Leg Syndrome ("RLS") and sleep apnea, and thus, Plaintiff is a member of a class of persons protected by the MHRA.

75. Plaintiff's disability affects several of his major life activities as described in the MHRA.

76. Plaintiff is under information and belief that Plaintiff's disability or being regarded as having such impairment by Defendant was a contributing factor in his discharge.

77. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant; thus, making Defendant liable for said actions under the doctrine of respondeat superior.

78. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

79. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

80. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his disability, in violation of Mo. Rev. Stat. § 213.055.

81. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income; as well as, other monetary and non-monetary benefits.

82. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain, and related compensatory damages.

83. By failing to take prompt and effective remedial action, such as re-employing Plaintiff, Defendant, in effect, condoned, ratified, and/or authorized the discrimination against Plaintiff.

84. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

85. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided in Mo. Rev. Stat. §213.111.2.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, for pre- and post- judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT III

**Violation under Mo. Rev. Stat. 213.010 et seq. Age Discrimination**

86.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

87.     Plaintiff, by virtue of his age, is a member of a class of persons protected by the MHRA.

88.     Plaintiff is under information and belief that Plaintiff's age was a contributing factor in his discharge.

89.     At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant; thus, making Defendant liable for said actions under the doctrine of respondeat superior.

90.     Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including age discrimination.

91.     Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

92.     As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his age, in violation of Mo. Rev. Stat. § 213.055.

93.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income; as well as, other monetary and non-monetary benefits.

94.     As a further direct and proximate result of Defendant's actions and/or omissions,

Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain, and related compensatory damages.

95. By failing to take prompt and effective remedial action, such as re-employing Plaintiff, Defendant, in effect, condoned, ratified, and/or authorized the discrimination against Plaintiff.

96. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

97. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided in MO. REV. STAT. §213.111.2.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, for pre- and post- judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### COUNT IV

**Violation under MO. REV. STAT. 213.010 et seq. Age Discrimination**

98. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

99. Plaintiff, by virtue of his religion, a Pentecostal blend of Christianity, is a member of a class of persons protected by the MHRA.

100. Plaintiff is under information and belief that Plaintiff's religion was a contributing

factor in his discharge.

101. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by the Defendant; thus, making Defendant liable for said actions under the doctrine of respondeat superior.

102. Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including religious discrimination.

103. Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

104. As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his religion, in violation of MO. REV. STAT. § 213.055.

105. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income; as well as, other monetary and non-monetary benefits.

106. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain, and related compensatory damages.

107. By failing to take prompt and effective remedial action, such as re-employing Plaintiff, Defendant, in effect, condoned, ratified, and/or authorized the discrimination against Plaintiff.

108. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the

rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

109. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided in Mo. REV. STAT. §213.111.2.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, for pre- and post- judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

## COUNT V

### Violation under MO. REV. STAT. 213.010 et seq. Retaliation

110. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

111. Defendant knew of and participated in said discriminatory conduct identified in this Petition, as Plaintiff had lodged complaints directly to Defendant's corporate office as well as notified his managers of the discrimination and need for reasonable accommodation.

112. Additionally, on or about November 13, 2013, Plaintiff timely filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC").

113. After reporting said discrimination, the Defendant retaliated against Plaintiff by taking the additional actions described in this Petition, including discharge.

114. Plaintiff's engaging in protected activities is at least a contributing factor in Defendant's decision to terminate his employment.

115. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

116. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish and pain, and related compensatory damages.

117. As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

118. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided in Mo. Rev. Stat. § 213.111.2.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against the Defendant for economic damages including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, punitive damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

### Demand for Jury Trial

Plaintiff requests a trial by jury, in the Circuit Court of Crawford County, Missouri on all counts and allegations of wrongful conduct alleged in this Petition.

Respectfully submitted,

HOLLINGSHEAD, PAULUS & ECCHER

/s/ Jeremy D. Hollingshead

Jeremy D. Hollingshead   #60447
7911 Forsyth Boulevard, Suite 300
Saint Louis, Missouri  63105
Telephone:     (314) 480-5474
Facsimile:      (314) 594-0825
Email:            j.hollingshead@hpelaw.com

/s/ John M. Eccher
John M. Eccher  #62869
7911 Forsyth Boulevard, Suite 300
Saint Louis, Missouri  63105
Telephone:     (314) 480-5474
Facsimile:      (314) 594-0825
Email:            j.eccher@hpelaw.com

DONNER APPLEWHITE

/s/ Steven A. Donner
Steven A. Donner       #63789
405 Washington Avenue
Saint Louis, Missouri  63102
Telephone:     (314) 231-7220 extension 7750
Facsimile:      (888) 785-4461
Email:            steve.donner@da-lawfirm.com

ATTORNEYS FOR PLAINTIFF