## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| **MICHAEL CASELMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | **Removed from Crawford** |
| | ) | **County Circuit Court,** |
| **GEORGIA-PACIFIC GYPSUM LLC,** | ) | **Case No. 14CF-CC00043** |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S ANSWER TO PLAINTIFF'S PETITION

Defendant Georgia-Pacific Gypsum LLC, by counsel of record, hereby answers Plaintiff's Petition as follows:

### Parties and Jurisdiction

1.      Plaintiff is a citizen of the United States and the State of Missouri.  Plaintiff was an employee of Defendant within the meaning of the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 *et seq.* (the "MHRA").

**ANSWER:**    Based on information and belief, Defendant admits that Plaintiff is a citizen of the United States and the State of Missouri.  Defendant admits that Plaintiff purports to be an "employee" under the MHRA.  Defendant denies any remaining allegations not specifically admitted.

2.      Defendant is a Delaware limited liability company registered as a foreign limited liability company with the Missouri Secretary of State.  Defendant is an "employer" within the meaning of the MHRA.

**ANSWER:**    Defendant admits that it is a Delaware limited liability company registered as a foreign limited liability company with the Missouri Secretary of State.  Defendant admits

that Plaintiff purports that it is an "employer" under the MHRA. Defendant denies any remaining allegations not specifically admitted.

3.     At all times relevant herein, Defendant was authorized to conduct business in the State of Missouri and was doing business in the State of Missouri.

**ANSWER:**    Defendant admits the allegations contained in Paragraph 3.

4.     Defendant conducts substantial and continuous business and has substantial and continuous contacts with the State of Missouri and the City of Cuba.

**ANSWER:**    Paragraph 4 contains legal conclusions that do not require a response from Defendant. To the extent a response is required, Defendant admits only that it conducts business within the State of Missouri and the City of Cuba. Defendant denies any remaining allegations not specifically admitted.

5.     This is an employment case based upon and arising under the MHRA, specifically unlawful discrimination based on Plaintiff's age, religion and disability and unlawful retaliation under §§ 213.055 and 213.070 of the MHRA, respectively.

**ANSWER:**    Defendant admits that Plaintiff brings the present action under the MHRA and that he alleges discrimination and retaliation. Defendant denies any wrongdoing under the MHRA. Defendant denies any remaining allegations not specifically admitted.

6.     This Court has jurisdiction and venue over all factual and legal matters relevant to this cause of action.

**ANSWER:**    Defendant denies that jurisdiction and venue are proper in the Crawford County, Missouri Circuit Court.

7.     Plaintiff's cause of action arises out of conduct that took place at Defendant's gypsum facility in Cuba, Crawford County, Missouri.

**ANSWER:** Defendant admits that Defendant worked at its Cuba, Crawford County, Missouri location. Defendant denies any wrongdoing under the MHRA. Defendant denies any remaining allegations not specifically admitted.

8. Defendant employed Plaintiff at Defendant's Cuba facility from June 1, 2013 until on or about March 6, 2014, at which point Defendant terminated Plaintiff's employment.

**ANSWER:** Defendant admits that Plaintiff was employed by Defendant at its Cuba, Missouri location. Defendant admits that Plaintiff was terminated on or about March 6, 2014. Defendant denies that Plaintiff's employment with it began on June 1, 2013. Defendant states that Plaintiff's employment with Defendant began on July 10, 2013

9. Jurisdiction and venue are proper in Cuba, Crawford County, Missouri, pursuant to Mo. Rev. Stat. §§ 508.010 and 213.111.

**ANSWER:** Defendant denies the allegations contained in Paragraph 9.

### General Allegations Common to All Counts

10. At the age of 49, Plaintiff applied for a manufacturing position at Defendant's Gypsum facility and was called in for an interview in June of 2013.

**ANSWER:** Based on information and belief, Defendant admits that at the time of Plaintiff's interview, Plaintiff was approximately 49. Defendant admits that Plaintiff applied for a special laborer position at Defendant's Cuba, Missouri location. Defendant admits that Plaintiff was called for an interview in June 2013. Defendant denies any remaining allegations not specifically admitted.

11. The interview went well, during which time Plaintiff told the interviewers about being active in the Ministry, a Pentecostal blend of Christianity, and disclosed that he has a sleep disorder.

**ANSWER:** Defendant denies the allegations in Paragraph 11.

12.     Plaintiff's sleep disorder is Restless Leg Syndrome ("RLS"), and he also suffers from sleep apnea.

**ANSWER:** Defendant admits that Plaintiff's treating physician represented to Defendant that Plaintiff had Restless Leg Syndrome. Defendant is without sufficient information or knowledge to admit or deny the remaining allegations in Paragraph 12.

13.     This sleep disorder requires a C-Pap machine and prescribed medication, Klonipin. If he missed a dosage of Klonipin, it could give him a seizure or even cause hospitalization.

**ANSWER:** Defendant is without sufficient information and knowledge to admit or deny the allegations in Paragraph 13, and therefore, denies the same.

14.     At the interview, Plaintiff disclosed this disorder when asked if it was alright that there might be a possibility of rotating shifts. Plaintiff immediately and candidly said, "I have a sleep disorder and take medication for it; I would try to do any job, but it would be very difficult for me to rotate hours."

**ANSWER:** Defendant denies the allegations contained in Paragraph 14.

15.     The interviewers did not express that there was a problem with this, and the Human Resources Manager, Joe Vallero, offered Plaintiff a position as a Utility Operator starting in the banding department on July 10, 2013.

**ANSWER:** Defendant admits that Plaintiff was offered a position with Defendant and that he was initially assigned to the banding department. Defendant admits that Plaintiff began working for it on July 10, 2013. Defendant denies all remaining allegations not specifically admitted.

16.    The position was a day shift position, and Plaintiff believed that it was a day shift position because of Plaintiff's sleep disorder.

**ANSWER:**    Defendant admits that Plaintiff worked a day shift.  Defendant is without sufficient information and knowledge to admit or deny the remaining allegations in Paragraph 16, and therefore, denies the same.

17.    At all times relevant herein, Plaintiff was supervised by his Foreman, Matt Walker.  Early on, for reasons unknown to Plaintiff, Mr. Walker applied two standards:  one for Plaintiff and one for everyone else.  For instance, all employees, started with property training, except Plaintiff.

**ANSWER:**    Defendant admits that Matt Walker supervised Plaintiff.  Defendant denies all remaining allegations in Paragraph 17.

18.    Mr. Walker required that others not help Plaintiff, leaving Plaintiff to get caught up to speed on his own.

**ANSWER:**    Defendant denies the allegations in Paragraph 18.

19.    After asking multiple times for proper banding table training, Plaintiff experienced the same result, which was Mr. Walker ignoring him and walking off.

**ANSWER:**    Defendant denies the allegations in Paragraph 19.

20.    This disparate treatment was so blatant that numerous employees witnessed it, and one of them stood up for Plaintiff by asking Mr. Walker if Plaintiff could be trained on the oversize banding table.  Mr. Walker refused.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 20.

21.    Notwithstanding this lack of training, Plaintiff maintained a solid performance level and, in time, actually trained new probation workers who would quickly progress past him.

**ANSWER:** Defendant denies the allegations contained in Paragraph 21.

22. Moreover, Mr. Walker singled out Plaintiff's work over all of the younger workers by telling him things like no more than four or five doors should be stacked without stamping and that Plaintiff should perform better. This was a policy that applied only to Plaintiff as other workers would stack the doors until the entire skid was full before stamping without any backlash from Mr. Walker.

**ANSWER:** Defendant admits only that Mr. Walker offered to Plaintiff ways that he could be more efficient. Defendant denies all remaining allegations not specifically admitted.

23. More surprisingly, these workers were offered permanent positions in the departments that they were in with higher pay.

**ANSWER:** Defendant is without sufficient information and knowledge to admit or deny which specific employees Plaintiff is referencing, and therefore, Defendant denies the allegations in Paragraph 23.

24. Additionally, Mr. Walker communicated to Plaintiff that he should make sure the clips were straight and professional looking even though Plaintiff's clips were attached the same was as everyone else's clips.

**ANSWER:** Defendant admits only that everyone had a role in ensuring that the referenced clips were straight. Defendant denies all remaining allegations in Paragraph 24 not specifically admitted.

25. After about six weeks on the job, Mr. Walker pulled Plaintiff aside and told him to go to another department, the chop saw, in order to assist others because "there was just no place in banding" for him.

**ANSWER:** Defendant admits that Mr. Walker relayed to Plaintiff that he would be needed outside of the banding department. Defendant denies all remaining allegations in Paragraph 25.

26. Mr. Walker told Plaintiff that he would be doing rotating shifts. Plaintiff told Mr. Walker that he could not do rotating shifts because of his sleep disorder.

**ANSWER:** Defendant admits that it was conveyed to Plaintiff that there were opportunities available that would require Plaintiff to work rotating shifts. Defendant admits that Plaintiff conveyed to Mr. Walker that he was unable to work rotating shifts because of a purported sleep disorder. Defendant denies any remaining allegations not specifically admitted.

27. Mr. Walker completely disregarded this, telling Plaintiff that he was told about rotating shifts during his interview. Plaintiff reminded him that at the same interview he did not hide anything but instead, stressed the severity of his condition and how it precluded him from working on rotating shifts.

**ANSWER:** Defendant admits only that Mr. Walker informed Plaintiff that Plaintiff was told about rotating shifts during Plaintiff's interview. Defendant denies all remaining allegations not specifically admitted.

28. Immediately after that conversation, Mr. Walker told him that there was just no room for him there even though he was having other employees trained on those same tasks.

**ANSWER:** Defendant denies the allegations contained in Paragraph 28.

29. Almost everyone in final processing was under the age of 30 and just about everyone hired to work the chop saw was under the age of 25.

**ANSWER:** Defendant admits only that employees at its Cuba, Missouri location vary in age. Defendant denies all remaining allegations not specifically admitted.

30. Around 60 days after being hired, another incident occurred when Mr. Walker specifically targeted Plaintiff and pulled him off of the chop saw to attend a meeting regarding a customer complaint with the banding department.

**ANSWER:** Defendant admits only that Mr. Walker spoke to Plaintiff about a customer complaint. Defendant denies all remaining allegations not specifically admitted.

31. Even though it was ultimately determined that one of the sanders had simply been adjusted incorrectly, Mr. Walker directly accused Plaintiff of being the one responsible for the complaint.

**ANSWER:** Defendant admits only that Plaintiff was one of three individuals responsible for the referenced complaint. Defendant denies all remaining allegations not specifically admitted.

32. On day 70 of his employment, Plaintiff was called into Mr. Walker's office, and Mr. Walker asked Plaintiff how he thought he was doing. Plaintiff told him that he was already running the chop saw, entering in sizes on the computer and filling orders. The only thing Plaintiff was not allowed to do at that point was drive a forklift, since Plaintiff was not yet cleared to do it despite the fact that Plaintiff had driven forklifts for over 25 years.

**ANSWER:** Defendant admits that Plaintiff and Mr. Walker had a meeting around day 70 of Plaintiff's employment with Defendant, during which they talked generally about Plaintiff's progress and work. Defendant admits that around day 70 of Plaintiff's employment he was not forklift certified. Defendant is without sufficient information and knowledge to admit or deny how long Plaintiff had driven a forklift, and therefore, denies the same. Defendant denies all remaining allegations not specifically admitted.

33.     Mr. Walker again told Plaintiff there was no room for him in banding or anywhere else except, again, on rotating shifts.  Plaintiff reminded Mr. Walker again of his medical condition, but Mr. Walker expressed that he did not care.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 33.

34.     Afterwards, Plaintiff repeated what Mr. Walker had told him to another worker, Brent.  Like other employees, Brent stood up for Plaintiff by telling Mr. Walker that Plaintiff was a good worker and asked Mr. Walker to let Plaintiff drive the forklift on a regular shift.  Mr. Walker still refused.

**ANSWER:**     Defendant is without sufficient information and knowledge as to what Plaintiff told other workers, and therefore, denies any allegations regarding the same.  Defendant denies all remaining allegations in Paragraph 34.

35.     Because of Mr. Walker's blatant disregard for Plaintiff's medical condition and his subsequent worry for adverse health consequences, Plaintiff called the corporate ethics line to file a discrimination report.

**ANSWER:**     Defendant admits that Plaintiff called to report a concern on or about September 23, 2013, during which he mentioned Mr. Walker.  Defendant denies all remaining allegations not specifically admitted.

36.     The next day, Plaintiff went into Mr. Vallero's office where others, including Mr. Walker, were waiting.  Mr. Vallero asked Plaintiff if he wanted to talk about the report that had been filed with corporate.  Plaintiff said "Yes".  Mr. Vallero said that he read the report and wanted Plaintiff to explain what he had put in the report.

**ANSWER:**     Defendant admits that on or about September 26, 2013, Mr. Vallero met with Plaintiff about Plaintiff's call.  Defendant admits that during that meeting Mr. Vallero and

Plaintiff discussed the content of Plaintiff's call. Defendant denies all remaining allegations contained in Paragraph 36 not specifically admitted.

37. Plaintiff recounted Mr. Walker's conversations with him and how he was attempting to force Plaintiff to work in a department with rotating shifts. Plaintiff repeated that he has a sleep disorder and described the bad effects that can result from such a change.

**ANSWER:** Defendant admits that it was an essential function of Plaintiff's employment with Defendant to work rotating shifts. Defendant admits that during the meeting on or about September 26, 2013, Plaintiff raised his sleep disorder. Defendant denies all remaining allegations not specifically admitted.

38. Mr. Vallero spoke up and said that rotating shifts were asked about during Plaintiff's interview. Plaintiff said, "Yes, you asked me about that' I also told everyone of my sleep disorder, and you hired me knowing this. I figured you put me on day shift because of that." Mr. Vallero replied, "No, that was just the luck of the draw."

**ANSWER:** Defendant admits that during the meeting on or about September 26, 2013, Mr. Vallero stated to Plaintiff that rotating shifts were discussed during Plaintiff's initial interview. Defendant denies all remaining allegations not specifically admitted.

39. Mr. Vallero then requested that Plaintiff have his doctor fill out a form stating that he is medically fit to work.

**ANSWER:** Defendant admits that in the meeting on or about September 26, 2013, Mr. Vallero provided Plaintiff a form for his physician to complete regarding whether Plaintiff could satisfy the essential functions of his position.

40. When prompted by Mr. Vallero at the end of the meeting if he would like to state anything else, Plaintiff recalled his disparate treatment by Mr. Walker. Afterwards, Plaintiff

proceeded to shake hands with everyone.  However, Mr. Walker never looked him in the eye and barely shook his hand.  From that point on, anytime that Plaintiff rain into Mr. Vallero, he would look extremely uncomfortable around Plaintiff.

**ANSWER:**  Defendant admits only that at the conclusion of the meeting on or about September 26, 2013, Plaintiff shook hands with everyone in the room.  Defendant denies the remaining allegations in Paragraph 40.

41.  Plaintiff's doctor filled out the form.  The form defined "medically fit" as the ability to lift, push, and pull, up to a hundred pounds, stand all day, and work 12 hour shifts up to 7 days a week, plus rotating shifts.

**ANSWER:**  Defendant admits only that the form provided to Plaintiff by Mr. Vallero listed job requirements and/or essential functions of Plaintiff's position, which included lifting materials up to 50 lbs; pushing and pulling finished product up to 100 lbs; constant standing; the ability to work 8 to 12 hours per shift up to 7 days a week; and the ability to work rotating shifts as assigned.  Defendant denies all remaining allegations not specifically admitted.

42.  She wrote that Plaintiff was medically fit to work and could perform shift work, but due to his sleep disorder, he should be kept on a regular schedule.  Shift changes could take place at worst on a monthly basis, preferably at six months, before considering a shift change.  A copy of the filled out form is attached hereto, marked as Plaintiff's Exhibit "A" and made a part hereof as if fully set forth herein.  He turned this into Mr. Vallero.

**ANSWER:**  Defendant admits that Plaintiff provided Exhibit A to Mr. Vallero.  Plaintiff admits that Plaintiff's physician indicated that he could come to work.  Plaintiff admits that Plaintiff's physician indicated that she recommended that Plaintiff be assigned a regular shift

and be on that shift from 1 to 6 months. Plaintiff denies all remaining allegations not specifically admitted.

43. When a person is hired, the lead man has a form to fill out in order to illustrate that a person is trained in tasks called a "sign-off sheet".

**ANSWER:** Defendant admits only that it maintains a record for its employees regarding on-the-job training. Defendant denies all remaining allegations not specifically admitted.

44. When Plaintiff was in banding, the lead man signed off that Plaintiff was trained to do everything. After Plaintiff's meeting with Mr. Walker on day 70, Mr. Walker had Brent fill out his chop saw form, illustrating that he was trained in everything except the forklift. Out of everyone who started simultaneously with Plaintiff, he was the only employee not signed off on the forklift.

**ANSWER:** Defendant admits that Plaintiff was not forklift certified by day 70 of his employment with Defendant. Defendant admits that Brent McClain filled out a form, which shows that Plaintiff was not qualified to operate a forklift at that time. Defendant admits that two separate trainers concluded that Plaintiff was not ready to be forklift certified. Defendant denies all remaining allegations not specifically admitted.

45. Some employees were even trained on the forklift after a week or two, whereas Plaintiff was not released to work the forklift after months on the job.

**ANSWER:** Defendant admits that it took Plaintiff several months before he was ready to be forklift certified. Defendant admits that when an employee becomes forklift certified varies. Defendant denies all remaining allegations not specifically admitted.

46.    On October 10, Plaintiff completed his 90th day of probation.  If completed successfully, an employee receives an orange hard hat instead of a yellow hard hat in order to signify his status as a promoted employee, complete with numerous benefits and a pay raise. Instead of receiving those benefits, Mr. Walker approached Plaintiff and asked him to go to his office.

**ANSWER:**    Defendant admits that Plaintiff's 90th day of employment with Defendant was on or about October 10, 2013.  Defendant admits that Mr. Walker and Plaintiff met on or about October 10, 2013.  Defendant admits that workers that have successfully completed their probationary period receive orange hardhats, while workers that have not wear yellow hardhats. Defendant denies all remaining allegations not specifically admitted.

47.    In the office, Mr. Walker told him that Mr. Vallero had decided that "because of your sleep thing, we have no home for you here, and we are going to extend your probation for another 60 days," in order to "see."

**ANSWER:**    Defendant admits only that on or about October 10, 2013, Mr. Walker indicated to Plaintiff that Plaintiff's probation would be extended another 60 days.  Defendant denies all remaining allegations not specifically admitted.

48.    At this time, multiple new hires had been hired and trained after Plaintiff, and there were five new hires scheduled to start the following month.

**ANSWER:**    Defendant admits only that it hires and trains employees at various times based on need.  Defendant denies all remaining allegations not specifically admitted.

49.    Later, Mr. Vallero handed Plaintiff more forms for his doctor to complete that asked for the same information as before.

**ANSWER:** Defendant admits only that Mr. Vallero asked Plaintiff to have his physician clarify Plaintiff's medical restrictions. Defendant denies all remaining allegations not specifically admitted.

50. Even at this point, Defendant was refusing to follow the medical directions of Plaintiff's doctor.

**ANSWER:** Defendant denies the allegations contained in Paragraph 50.

51. Despite his doctor clearly outlining Plaintiff's limitations, Mr. Vallero was requiring even more precise language from the doctor. Mr. Vallero even told Plaintiff that all of this was happening to him because he filed a corporate ethics complaint earlier.

**ANSWER:** Defendant admits only that Mr. Vallero asked Plaintiff to have his physician clarify Plaintiff's medical restrictions. Defendant denies all remaining allegations not specifically admitted.

52. Plaintiff then filed a complaint with the MCHR and the EEOC, and during the resulting investigation, Defendant terminated Plaintiff's employment.

**ANSWER:** Defendant admits that Plaintiff filed a Charge of Discrimination that was duly filed with the MCHR and EEOC. Defendant admits that Plaintiff's employment was terminated on March 6, 2014, because of poor performance. Defendant denies all remaining allegations not specifically admitted.

## Administrative Procedures

53. Plaintiff realleges and incorporates all of the above paragraphs as if fully stated herein.

**ANSWER:** Defendant incorporates by reference its responses to Paragraphs 1-52 above as if fully set forth herein.

54.     On or about November 13, 2013, Plaintiff timely filed with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission ("EEOC") a Charge of Discrimination against Defendant alleging discrimination based on his age, religion and disability as well as retaliation (a copy of said Charge of Discrimination is attached hereto, marked as Plaintiff's Exhibit "B" and made a part hereof as if fully set forth herein).  Upon being fired during the EEOC's investigation, Plaintiff filed an amended Charge of Discrimination (a copy of which is attached hereto, marked Plaintiff's Exhibit "C" and made a part hereof as if fully set forth herein) and requested a Notice of Right to Sue.

**ANSWER:**     Based on information and belief, Defendant admits that on or about November 13, 2013, Plaintiff filed a Charge of Discrimination that was duly filed with the EEOC and MCHR.  Defendant admits that Plaintiff's Charge of Discrimination alleged discrimination based on religion, age, and disability, as well as retaliation.  Defendant admits that Plaintiff filed an Amended Charge of Discrimination after his termination.  Defendant admits that Plaintiff requested a Notice of Right to Sue.  Defendant denies any remaining allegations not specifically admitted.

55.     On or about March 26, 2014, the MCHR issued to Plaintiff a Notice of Right to Sue (a copy of said Notice of Right to Sue is attached hereto, marked Plaintiff's Exhibit "D" and made a part hereof as if fully set forth within), and this lawsuit was filed within 90 days of the issuance of the MCHR's Notice of Right to Sue.

**ANSWER:**     Based on information and belief, Defendant admits that on or about March 26, 2014, the MCHR issued to Plaintiff a Notice of Right to Sue.  Defendant admits that Plaintiff filed suit in the Circuit Court of Crawford County, Missouri on June 23, 2014.  Defendant denies all remaining allegations not specifically admitted.

56. The aforesaid Charge of Discrimination provided the MCHR and the EEOC sufficient opportunity to investigate the full scope of the controversy between the parties and, accordingly, the sweep of this judicial complaint may be and is as broad as the scope of the MCHR or EEOC investigation, which could reasonably be expected to have grown out of the Charge of Discrimination.

**ANSWER:** Defendant is without sufficient information and knowledge to admit or deny the allegations in Paragraph 56, and therefore, denies the same.

57. Plaintiff has satisfied all private, administrative, and judicial prerequisites to the institution of this action, and it has been filed within the requisite statute of limitations.

**ANSWER:** Paragraph 57 contains legal conclusions that do not require a response from Defendant. To the extent a response is required, Defendant denies the allegations in Paragraph 57.

## COUNT I

### Violations under Mo. Rev. Stat. § 213.010 et seq. Failure to Accommodate

58. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

**ANSWER:** Defendant incorporates by reference its response to Paragraphs 1-57 above as if fully set forth herein.

59. Plaintiff is "disabled" as that term is defined by the MHRA at all times relevant herein.

**ANSWER:** Paragraph 59 contains legal conclusions that do not require a response from Defendant. To the extent a response is required, Defendant is without sufficient

information and knowledge to admit or deny the allegations in Paragraph 59, and therefore, denies the same.

60.     Plaintiff is disabled pursuant to the MHRA because he suffers from Restless Leg Syndrome ("RLS") and sleep apnea, and thus, Plaintiff is a member of a class of persons protected by the MHRA.

**ANSWER:**     Paragraph 60 contains legal conclusions that do not require a response from Defendant.  To the extent a response is required, Defendant states that Plaintiff's physician represented to Defendant that Plaintiff has Restless Leg Syndrome.  Plaintiff is without sufficient information and knowledge to admit or deny the remaining allegations in Paragraph 60, and therefore, denies the same.

61.     Plaintiff's disability affects several of his major lift activities as described in the MHRA.

**ANSWER:**     Paragraph 61 contains legal conclusions that do not require a response from Defendant.  To the extent a response is required, Defendant is without sufficient information and knowledge to admit or deny the allegations in Paragraph 61, and therefore denies, the same.

62.     Plaintiff could perform the essential functions of his job with or without reasonable accommodation.

**ANSWER:**     Paragraph 62 contains legal conclusions that do not require a response from Defendant.  To the extent a response is required, Defendant denies the allegations in Paragraph 62.

63.     Plaintiff requested the reasonable accommodation of not having to rotate shifts.

**ANSWER:** Paragraph 63 contains legal conclusions that do not require a response from Defendant. To the extent a response is required, Defendant denies the allegations in Paragraph 63.

64. The above-referenced request was a reasonable accommodation that was possible for Defendant to provide.

**ANSWER:** Paragraph 64 contains legal conclusions that do not require a response from Defendant. To the extent a response is required, Defendant denies the allegations in Paragraph 64.

65. Defendant refused to engage in any interactive process with Plaintiff to determine a reasonable accommodation for his disabilities.

**ANSWER:** Defendant denies the allegations in Paragraph 65.

66. Instead of providing Plaintiff with the requested accommodation without adverse action, Defendant terminated Plaintiff's employment.

**ANSWER:** Defendant admits only that Plaintiff was terminated for poor performance on March 6, 2014. Defendant denies all remaining allegations not specifically admitted.

67. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as other monetary and non-monetary benefits.

**ANSWER:** Defendant denies the allegations in Paragraph 67.

68. As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress and mental anguish and pain, and related compensatory damages.

**ANSWER:** Defendant denies the allegations in Paragraph 68.

69. By failing to take prompt and effective remedial action, Defendant, in effect condoned, ratified and/or authorized the discrimination against Plaintiff.

**ANSWER:** Defendant denies the allegations in Paragraph 69.

70. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

**ANSWER:** Defendant denies the allegations in Paragraph 70.

71. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided in Mo. Rev. Stat. § 213.111.2.

**ANSWER:** Defendant denies the allegations in Paragraph 71.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages including, but not limited to: back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, for pre- and post- judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**ANSWER:** The remainder of Count I of the Petition contains prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Plaintiff is entitled to the relief he seeks, such implications are hereby denied.

## COUNT II

### Violation under Mo. Rev. Stat. 213.010 et seq. Disability Discrimination

72. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

**ANSWER:** Defendant incorporates by reference its response to Paragraphs 1-71 above as if fully set forth herein.

73. Plaintiff is "disabled" as that term is defined by the MHRA at all times relevant herein.

**ANSWER:** Paragraph 73 contains legal conclusions that do not require a response from Defendant. To the extent a response is required, Defendant is without sufficient information and knowledge to admit or deny the allegations in Paragraph 73, and therefore, denies the same.

74. Plaintiff is disabled pursuant to MHRA because he suffers from Restless Leg Syndrome ("RLS") and sleep apnea, and thus, Plaintiff is a member of a class of persons protected by the MHRA.

**ANSWER:** Paragraph 74 contains legal conclusions that do not require a response from Defendant. To the extent a response is required, Defendant states that Plaintiff's physician represented to Defendant that Plaintiff has Restless Leg Syndrome. Plaintiff is without sufficient information and knowledge to admit or deny the remaining allegations in Paragraph 74, and therefore, denies the same.

75. Plaintiff's disability affects several of his major life activities as described in the MHRA.

**ANSWER:** Paragraph 75 contains legal conclusions that do not require a response from Defendant. To the extent a response is required, Defendant is without sufficient information and knowledge to admit or deny the allegations in Paragraph 75, and therefore denies, the same.

76.     Plaintiff is under information and belief that Plaintiff's disability or being regarded as having such impairment by Defendant was a contributing factor in his discharge.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 76.

77.     At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant; thus, making Defendant liable for said actions under the doctrine of respondeat superior.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 77.

78.     Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

**ANSWER:**     Defendant denies the allegations in Paragraph 78.

79.     Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

**ANSWER:**     Defendant denies the allegations in Paragraph 79.

80.     As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his disability, in violation of Mo. Rev. Stat. § 213.055.

**ANSWER:**     Defendant denies the allegations in Paragraph 80.

81.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as, other monetary and non-monetary benefits.

**ANSWER:**     Defendant denies the allegations in Paragraph 81.

82.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain, and related compensatory damages.

**ANSWER:**     Defendant denies the allegations in Paragraph 82.

83.     By failing to take prompt and effective remedial action, such as re-employing Plaintiff, Defendant, in effect, condoned, ratified, and/or authorized the discrimination against Plaintiff.

**ANSWER:**     Defendant denies the allegations in Paragraph 83.

84.     As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

**ANSWER:**     Defendant denies the allegations in Paragraph 84.

85.     Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided in Mo. Rev. Stat. § 213.111.2.

**ANSWER:**     Defendant denies the allegations in Paragraph 85.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages including, but not limited to:  back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, for pre- and post- judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**ANSWER:** The remainder of Count II of the Petition contains prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Plaintiff is entitled to the relief he seeks, such implications are hereby denied.

## COUNT III

### Violation under Mo. Rev. Stat. § 213.010 et seq. Age Discrimination

86. Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

**ANSWER:** Defendant incorporates by reference its response to Paragraphs 1-85 above as if fully set forth herein.

87. Plaintiff, by virtue of his age, is a member of a class of persons protected by the MHRA.

**ANSWER:** Paragraph 87 contains legal conclusions that do not require a response from Defendant. To the extent a response is required, based on information and belief, Plaintiff admits only that at the time of Plaintiff's hire, he was 49. Defendant denies all remaining allegations not specifically admitted.

88. Plaintiff is under information and belief that Plaintiff's age was a contributing factor in his discharge.

**ANSWER:** Defendant denies the allegations contained in Paragraph 88.

89. At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant; thus, making Defendant liable for said actions under the doctrine of respondeat superior.

**ANSWER:** Defendant denies the allegations contained in Paragraph 89.

90.     Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including age discrimination.

**ANSWER:** Defendant denies the allegations contained in Paragraph 90.

91.     Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

**ANSWER:** Defendant denies the allegations contained in Paragraph 91.

92.     As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his age, in violation of Mo. Rev. Stat. § 213.055.

**ANSWER:** Defendant denies the allegations contained in Paragraph 92.

93.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as, other monetary and non-monetary benefits.

**ANSWER:** Defendant denies the allegations contained in Paragraph 93.

94.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain, and related compensatory damages.

**ANSWER:** Defendant denies the allegations contained in Paragraph 94.

95.     By failing to take prompt and effective remedial action, such as re-employing Plaintiff, Defendant, in effect, condoned, ratified, and/or authorized the discrimination against Plaintiff.

**ANSWER:** Defendant denies the allegations contained in Paragraph 95.

96.     As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 96.

97.     Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided in Mo. Rev. Stat. § 213.111.2.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 97.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages including, but not limited to:  back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, for pre- and post- judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**ANSWER:**     The remainder of Count III of the Petition contains prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Plaintiff is entitled to the relief he seeks, such implications are hereby denied.

## COUNT IV

### Violation under Mo. Rev. Stat. § 213.010 et seq. Age Discrimination

98.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

**ANSWER:**     Defendant incorporates by reference its response to Paragraphs 1-97 above as if fully set forth herein.

99.     Plaintiff, by virtue of his religion, a Pentecostal blend of Christianity, is a member of a class of persons protected by the MHRA.

**ANSWER:**    Defendant is without sufficient information and knowledge to admit or deny the allegations in Paragraph 99, and therefore, denies the same.

100.    Plaintiff is under information and belief that Plaintiff's religion was a contributing factor in his discharge.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 100.

101.    At all times mentioned herein, before and after, the above described perpetrators were agents, servants, and employees of Defendant and were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized by Defendant; thus, making Defendant liable for said actions under the doctrine of respondeat superior.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 101.

102.    Defendant failed to make good faith efforts to establish and enforce policies to prevent illegal discrimination against its employees, including disability discrimination.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 102.

103.    Defendant failed to properly train or otherwise inform its supervisors and employees concerning their duties and obligations under the civil rights laws, including the MHRA.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 103.

104.    As shown by the foregoing, Plaintiff suffered intentional discrimination at the hands of Defendant, based on his religion, in violation of Mo. Rev. Stat. § 213.055.

**ANSWER:**    Defendant denies the allegations contained in Paragraph 104.

105.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as, other monetary and non-monetary benefits.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 105.

106.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain, and related compensatory damages.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 106.

107.     By failing to take prompt and effective remedial action, such as re-employing Plaintiff, Defendant, in effect, condoned, ratified, and/or authorized the discrimination against Plaintiff.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 107.

108.     As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 108.

109.     Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided in Mo. Rev. Stat. § 213.111.2.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 109.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages including, but not limited to:  back-pay, lost benefits, front-pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and

costs incurred herein, for pre- and post- judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**ANSWER:** The remainder of Count IV of the Petition contains prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Plaintiff is entitled to the relief he seeks, such implications are hereby denied.

## **COUNT V**

### **Violation under Mo. Rev. Stat. § 213.010 et seq. Retaliation**

110.     Plaintiff re-alleges and incorporates herein by reference, as though fully set forth herein, all of the above numbered paragraphs.

**ANSWER:** Defendant incorporates by reference its response to Paragraphs 1-109 above as if fully set forth herein.

111.     Defendant knew of and participated in said discriminatory conduct identified in this Petition, as Plaintiff had lodged complaints directly to Defendant's corporate office as well as notified his managers of the discrimination and need for reasonable accommodation.

**ANSWER:** Defendant denies the allegations contained in Paragraph 111.

112.     Additionally, on or about November 13, 2013, Plaintiff timely filed a Charge of Discrimination with the Missouri Commission on Human Rights ("MCHR") and the Equal Employment Opportunity Commission "(EEOC").

**ANSWER:** Paragraph 112 contains legal conclusions that do not require a response from Defendant.  To the extent a response is required, Defendant admits only that on or about November 13, 2013, Plaintiff's Charge of Discrimination was duly filed with the MCHR and EEOC.  Defendant denies all remaining allegations not specifically admitted.

113.     After reporting said discrimination, the Defendant retaliated against Plaintiff by taking additional actions described in this Petition, including discharge.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 113.

114.     Plaintiff's engaging in protected activities is at least a contributing factor in Defendant's decision to terminate his employment.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 114.

115.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as, other monetary and non-monetary benefits.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 115.

116.     As a further direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered a loss of self-esteem, humiliation, emotional distress, mental anguish, pain, and related compensatory damages.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 116.

117.     As shown by the foregoing, Defendant's conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendant or to deter it and other companies from like conduct in the future.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 117.

118.     Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided in Mo. Rev. Stat. § 213.111.2.

**ANSWER:**     Defendant denies the allegations contained in Paragraph 118.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendant for economic damages including, but not limited to:  back-pay, lost benefits, front-

pay, injunctive relief, compensatory damages, punitive damages, reasonable attorneys' fees and costs incurred herein, for pre- and post- judgment interest as allowed by law, and for such other and further legal and equitable relief as the Court deems just and proper.

**ANSWER:** The remainder of Count V of the Petition contains prayers for relief requiring neither an admission nor a denial, but to the extent such prayers in any way imply that Plaintiff is entitled to the relief he seeks, such implications are hereby denied.

### Demand for Jury Trial

Plaintiff requests a trial by jury, in the Circuit Court of Crawford County, Missouri on all counts and allegations of wrongful conduct alleged in this Petition.

**ANSWER:** Plaintiff's demand for a jury trial does not require a response from Defendant. Defendant denies any wrongdoing under the MHRA.

### GENERAL DENIAL

Defendant denies each and every allegation, title, count, claim, and prayer contained in the Petition which is not expressly admitted hereinabove.

### AFFIRMATIVE AND OTHER DEFENSES

1. For its first defense, Defendant states that some or all of Plaintiff's Petition fails to state a claim upon which relief can be granted.

2. For its second defense, Defendant asserts that some or all of Plaintiff's claims contained in the Petition are frivolous, unreasonable, and vexatious, thereby entitling Defendant to an award of costs and attorneys' fees incurred in defense of this action.

3. For its third defense, upon information and belief, Defendant states that Plaintiff did not sustain any damages as a result of Defendant's alleged actions.

4.      For its fourth defense, Defendant states that Plaintiff has failed to mitigate his damages.

5.      For its fifth defense, Defendant states that it had legitimate, nondiscriminatory reasons for its actions, including Plaintiff's poor work performance.

6.      For its sixth defense, Defendant states that the requirement of working rotating shifts is job-related and consistent with business necessity.

7.      Defendant reserves the right to assert such additional defenses as may become apparent during the course of discovery including, but not limited to, any after-acquired evidence of Plaintiff's misconduct.

WHEREFORE, having fully answered Plaintiff's Petition, Defendant Georgia-Pacific Gympsum LLC respectfully requests that the Petition be dismissed in its entirety, that Plaintiff take nothing in this action, and that Defendant be awarded the costs and reasonable attorneys' fees that it incurs in defense of this action.

Respectfully submitted this 30th day of July, 2014.

**SEYFERTH BLUMENTHAL & HARRIS LLC**

  */s/ Michael L. Blumenthal*

Michael L. Blumenthal   Mo. Bar No. 49153
Alex P. Aguilera     Mo. Bar No. 63681
4801 Main Street, Suite 310
Kansas City, Missouri 64112
(816) 756-0700
(816) 756-3700 Facsimile
mike@sbhlaw.com
alex@sbhlaw.com

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of this document was served via the Court's ECF system, which sent an electronic notice to the following on this 30th day of July, 2014:

Jeremy D. Hollingshead, MO # 60447
John M. Eccher, MO # 62869
Hollingshead, Paulus & Eccher
7911 Forsyth Boulevard, Suite 300
Saint Louis, Missouri 63105
(314) 480-5474
(314) 594-0825 Facsimile
j.hollingshead@hpelaw.com

Steven A. Donner, MO # 63789
Donner Applewhite
405 Washington Avenue
Saint Louis, Missouri  63102
(314) 231-7220, Ext. 7750
(888) 785-4461 Facsimile
Steve.donner@da-lawfirm.com

**Attorneys for Plaintiff**

  */s/ Michael L. Blumenthal*

Attorney for Defendant